**FILED**

OCT - 5 2016

Clerk, U.S. District and
Bankruptcy Courts

**IN THE UNIDTED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Shapat Nabaya
    Sovereign National,
           Creditor,
Vs.

Wally Stark
    Defendant.

Case: 1:16-cv-01987   Jury Demand
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 10/5/2016
Description: Pro Se Gen. Civil  (F Deck)

### PLAINTIFF DEMANDS A JURY TRIAL

### JURISDICTION

This is a civil action brought pursuant to Bivens vs. Six Unknown Named Agents of the Federal

Bureau of Narcotic, 403 U.S. 388 (1971). The Court has jurisdiction over this action pursuant to

28 USC 1331 and 2201.

Plaintiff: Shapat Nabaya
        P.O. Box 50364
        Richmond, Va. 23250

Defendant: Wally Stark
         IRS Collection Officer
         400 North 8th Street
         Richmond, Va. 23219

**PREVIOUS LAWSUITS:**

Sovereign Nabaya has sued the defendant in Chesterfield Circuit Court, Chesterfield, Va.

(PENDING), U.S. District Court, Richmond, Va. (sanctioned from filing in said court), and  U.S.

Bankruptcy Court, Richmond, Va., all to no avail.

    Comes now Shapat Nabaya a sovereign national man, to exercise his civil rights to file a suit

pursuant to Bivens vs. Six Unknown Named Agents 403 U.S. 388 (1971). The U.S. Supreme Court

1



ruled that an implied cause of action existed for an individual whose Fourth Amendment

freedom from unreasonable search and seizures had been violated by federal agents.

## FACTS

Since Feb. 2013 defendant Wally Stark has been violating the civil and Constitution rights of

plaintiff Nabaya with an illegal search and seizure. Defendant Stark has placed a levy on

plaintiff's pension account without providing him with a warrant and an affidavit, as required

by the Fourth Amendment of the U.S. Constitution. Defendant Stark has not filed a federal tax

lien on sovereign Nabaya as required by law. Defendant Stark has not provided plaintiff with

any documents to prove he is liable for any taxes. Defendant Stark is discriminating against

plaintiff Nabaya by not processing his NYCERS Form F349. Said form is a tax exempt form. As it

is already known, the IRS has targeted certain individuals and groups, and violated their

exempt status by delaying or denying their process of said forms. Defendant Stark is malicious

in his actions as a collections officer. Defendant Stark is violating federal law, while he is not

processing the exempt form, but collecting taxes and not proving a warrant and affidavit for

said collects. Defendant Stark is committing fraud, wire fraud, and theft, because he has not

provided plaintiff with any documents that all funds were recorded with the U.S. Treasury

and a court of law has authorized his actions.

## STATEMENT OF CLAIM FOR WHICH RELIEFE CAN BE GRANTED

Plaintiff Nabaya has suffered mental and emotion stress. Plaintiff Nabaya is going though

financial hardships because of this burden of an unlawful levy. This unlawful action is causing

financial stress on plaintiff and his family. In the beginning of this unlawful levy, plaintiff and his

family could not pay rent for the first three months as a result of this levy. Till this day

defendant Stark has not demonstrated that plaintiff Nabaya was or is liable for any taxes.

## CAUSE OF ACTION

**FOURTH AMENDMENT:**

Defendant Stark has violated plaintiff Nabaya's right to the Four Amendment, by stealing from

his pension account, having access to his personal information without plaintiff Nabaya's

permission, and by not serving him a warrant and affidavit for the search and seizure of his

pension account.

**FIFTH AMENDMENT:**

Defendant Stark has denied plaintiff Nabaya his right to due process, as afforded every citizen

and non-citizen.

## RELIEF SOUGHT

Wherefore, plaintiff Nabaya seeks injunctive relief from illegal taxes, harassment, racial

discrimination, mental and emotional stress, fraud, wire fraud and theft. **Restitution of all**

**funds.** Nabaya seek $800,000 in punitive damages, $80,000 legal fees and treble damages.

## DEMAND OF A JURY TRIAL

Sovereign Shapat Nabaya demands a jury trial pursuant to the 7th Amendment of the U.S.

Constitution.

## STATEMENT OF AFFIRMATION

I, Shapat Nabaya affirm that all statement herein are true, correct and not misleading to the

best of my belief and understanding.

ALL NATURE/COMMON LAW RIGHTS ARE RESERVED

Shapat Nabaya

3

## **EVIDENCE**

A.

Enclosed is a copy of the court order protecting plaintiff Nabaya's pension from being diminished and impaired. See Exhibit A Mc Garrigle vs. City of New York.

B.

Defendant Stark will not process present and past federal income tax withholding forms F349. See Exhibit B NYCERS Form F 349.

C.

Plaintiff Nabaya has paid shares into his pension plain, and it is protected from IRS taxes. See Exhibit C. R.V.I. Guaranty Co. Ltd. Vs Commissioner (IRS)

D.

Plaintiff Nabaya has been targeted for discrimination that is practiced by the IRS and its agents. See Linchpins of Liberty et al. vs U.S. and True the Vote Inc. vs. IRS.

E.

Defendant Stark's levy lacks legal foundation. Plaintiff Nabaya is not liable for any taxes. See Exhibit E Cryer vs. IRS.

F.

Plaintiff Nabaya does not have a corporation that produces gains to be taxed, no licenses from the government to do business, and is not a government employee. See Exhibit F U.S. vs. James Michael Long.

G.

Joseph Banister, a former IRS agent, resigned his position as a tax collector, claiming such practices by the IRS is unconstitutional, has affirmed plaintiff Nabaya's right and belief, that plaintiff Nabaya is not liable for any taxes. See Exhibit A1 UNITED STATES OF AMERICA vs. Joseph Banister.

H.

Plaintiff Nabaya is protected against targeting, harassment, and discrimination by the IRS and its agents. See Exhibit G. TRUE THE VOTE vs. IRS

purposes. McKinney's Const. Art. 5, § 7;
McKinney's Retirement and Social Security Law
§ 504-a.



3 Cases that cite this headnote

**Attorneys and Law Firms**

**\*\*529** Michael A. Cardozo, Corporation Counsel, New York (Susan Paulson of counsel), for appellants.

Koehler & Isaacs LLP, New York (Mercedes Maldonado of counsel), for respondents.

TOM, J.P., MARLOW, ELLERIN, WILLIAMS, McGUIRE, JJ.

**Opinion**

**\*196** Order and judgment (one paper), Supreme Court, New York County (Rosalyn Richter, J.), entered June 25, 2004, after a hearing, annulling respondents' calculation of McGarrigle's pension, and directing respondents to recalculate the pension, unanimously affirmed, without costs.

In 1990, the Legislature created a twenty-year retirement program for New York City correction members below the rank of captain (Retirement and Social Security Law [RSSL] § 504–a). McGarrigle became a member of that program in 1991, after electing to join it rather than the distinct retirement program he had joined in 1982. In 1991, and at all times thereafter, **\*\*530** one of the benefits of McGarrigle's membership in the twenty-year retirement program was the right to a pension of fifty percent of his final average salary upon completion of "twenty or more years of credited service" (see RSSL § 504–a [c] ). PENSIONS ARE NOT TO BE TAXED, DIMINISHED.

As the Court of Appeals stated in Ballentine v. Koch, 89 N.Y.2d 51, 56, 651 N.Y.S.2d 362, 674 N.E.2d 292 [1996]:



"Article V, § 7 of the N.Y. Constitution protects as 'a contractual relationship' the benefits of membership in a public pension or retirement system against diminishment and impairment. The provision 'fix[es] the rights of the employees at the time of commencement of membership in [a pension or retirement] system, rather than as previously at retirement' (Matter of Guzman v. New York City Employees' Retirement Sys., 45 N.Y.2d 186, 190–191 [408 N.Y.S.2d 59, 379 N.E.2d 1189], citing Birnbaum v. New York State Teachers \*197 Retirement Sys., 5 N.Y.2d 1, 9 [176 N.Y.S.2d 984, 152 N.E.2d 241] ), and thus prohibits unilateral action by either the employer or the Legislature that impairs or diminishes the rights established by the employee's membership (Matter of Village of Fairport v. Newman, 90 A.D.2d 293, 295 [457 N.Y.S.2d 145], appeal dismissed 58 N.Y.2d 1112 [462 N.Y.S.2d 1030, 449 N.E.2d 747] )."

Respondents concede that McGarrigle retired with twenty years of "credited service"; nine months consisted of military service with the federal government, as permitted by RSSL § 513(c). At all relevant times, the term "final average salary" has been defined as "the average wages earned by ... a member [of a public retirement system] during any three consecutive years which provide the highest average wage" (RSSL § 512[a] ). Respondents do not dispute that the City gave McGarrigle longevity adjustments after five and ten years of service.

The current dispute between the parties arose following McGarrigle's retirement, when respondent New York City Employees' Retirement System (NYCERS) determined that McGarrigle was not entitled to have the five- and ten-year longevity adjustments included in his final average salary for purposes of computing his pension. According to respondents, McGarrigle is not entitled to have those longevity adjustments included because the collective bargaining agreement between petitioner Correction Officers' Benevolent Association (COBA) and the City states, "The adjustment after the 5th and 10th years of service shall not be computed as salary for pension purposes until after completing 20 years of service." Respondents contend that "service," which is not defined in the agreement, means service in the title of correction officer. It is undisputed that McGarrigle does not have twenty years of service in the title of correction officer. Accordingly, respondents argue before this Court, as they did below, that because the Office of Labor Relations has consistently interpreted this twenty-year requirement to mean twenty years of actual service as a correction officer, NYCERS properly excluded McGarrigle's five- and ten-year longevity adjustments from the calculation of his pension payment.

Respondents' argument begs the logically prior question of whether McGarrigle had a constitutionally protected contractual right, as of the time he joined the twenty-year retirement program, to a pension equal to fifty percent of his final average salary after twenty years of "credited service." If McGarrigle has such a constitutionally protected right, respondents' defense to his unconstitutional impairment claim reduces to the contention that the impairment is lawful because the City has consistently impaired his constitutionally protected right.

**\*\*531 \*198** The controlling issue on this appeal is a pure question of law: the meaning of the phrase "credited service." The parties cite no cases construing this term, but we need not and do not resolve it given respondents' concession. As noted, respondents concede that McGarrigle in fact retired with twenty years of credited service. Thus, respondents can prevail only if McGarrigle waived the protection of Article V, § 7 (*see e.g. Ballentine,* 89 N.Y.2d at 58, 651 N.Y.S.2d 362, 674 N.E.2d 292).

Although respondents note that they did not raise the defense of waiver in their answer, they can prevail only if McGarrigle did waive. Waiver is not merely implicit in their arguments, respondents explicitly argue in their brief that a collective bargaining unit may waive its members' constitutional pension rights. Here, however, no waiver can be found. The very collective bargaining agreement on which respondents rely expressly states as follows: "This Agreement is not intended and shall not be construed as a waiver of any right or benefit to which Correction Officers are entitled by law." Even if the agreement had not contained such a provision, respondents' current interpretation of "service" is not the only possible meaning of that term; this unqualified term could also include the narrower term, "credited service." This ambiguity is fatal to respondents' argument.

To be sure, as McGarrigle's collective bargaining agent, COBA had the authority to waive the constitutional protections of Article V, § 7, and a waiver may be implied from the course of conduct of the parties to collective bargaining negotiations (*see Ballentine,* 89 N.Y.2d at 58, 651 N.Y.S.2d 362, 674 N.E.2d 292). Respondents, who bore the burden of proving waiver (*see e.g. City of New York v. State of New York,* 40 N.Y.2d 659, 669, 389 N.Y.S.2d 332, 357 N.E.2d 988 [1976]; *Rosenthal v. City of New York,* 283 A.D.2d 156, 160, 725 N.Y.S.2d 20 [2001], *lv. dismissed* 97 N.Y.2d 654, 737 N.Y.S.2d 54, 762 N.E.2d 932 [2001] ), did not show that COBA agreed that the term "service" has the meaning that respondents now ascribe to it. Respondents' current position, moreover, is scarcely consistent with the City's express agreement to the language of the collective bargaining agreement providing that it "is not intended and shall not be construed as a waiver of any right or benefit to which Correction Officers are entitled by law." Finally, respondents point to side letters between COBA and the City which provide that service in the police and fire departments would be treated as correction service. Given the equivocal meaning of the term "service" and the express "no-waiver" provision of the collective bargaining agreement, respondents' reliance on the side letters is unavailing. The import of the letters is itself ambiguous, as COBA may have entered into them out of an excess of caution.

**All Citations**

23 A.D.3d 196, 803 N.Y.S.2d 529, 2005 N.Y. Slip Op. 08197

**McGarrigle v. City of New York, 23 A.D.3d 196 (2005)**

803 N.Y.S.2d 529, 2005 N.Y. Slip Op. 08197

**McGarrigle v. City of New York, 23 A.D.3d 196 (2005)**

803 N.Y.S.2d 529, 2005 N.Y. Slip Op. 08197

**McGarrigle v. City of New York, 23 A.D.3d 196 (2005)**

803 N.Y.S.2d 529, 2005 N.Y. Slip Op. 08197

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.                    1

**McGarrigle v. City of New York, 23 A.D.3d 196 (2005)**

803 N.Y.S.2d 529, 2005 N.Y. Slip Op. 08197

23 A.D.3d 196

Supreme Court, Appellate Division, First Department, New York.

In re David McGARRIGLE, et al., Petitioners–Respondents,

v.

CITY OF NEW YORK, et al., Respondents–Appellants.

Nov. 3, 2005.

**Synopsis**

**Background:** Retired correction officer in New York City Department of Correction who had chosen to participate in twenty-year retirement program brought Article 78 proceeding challenging New York City Employees' Retirement System (NYCERS) decision to exclude longevity adjustments earned upon reaching his fifth and tenth years of correction service in his final average salary for pension computation purposes and contending it violated provisions of Retirement and Social Security Law (RSSL) and pension impairment clause of New York State Constitution. The Supreme Court, New York County, Rosalyn Richter, J., 4 Misc.3d 1004(A), 791 N.Y.S.2d 870, annulled city's calculation of officer's pension and directed city to recalculate it. City appealed.

**Holding:** The Supreme Court, Appellate Division, held that officer retired with twenty years of credited service and did not waive constitutional protections of pension impairment clause to have his longevity payments included in his pension calculation.

Affirmed.

West Headnotes (1)

[1]     **Prisons**
        👈Retirement and pensions
        **Public Employment**
        👈Pensions and retirement benefits in general

        New York City correction officer who had
        retired with twenty years of credited service did
        not waive protection of state constitution's
        pension impairment clause to have his five and
        ten year longevity adjustments included in his
        final average salary for pension computation

Log In | Sign Up

# Matter of McGARRIGLE v City of New York

**Annotate this Case**

[*1] Matter of McGarrigle v City of New York 2004 NY Slip Op 50652(U) Decided on June 18, 2004 Supreme Court, New York County Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 18, 2004
Supreme Court, New York County

In the Matter of the Application of DAVID McGARRIGLE and THE CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, Petitioners, For a Judgment and Order Pursuant to Article 78 of the Civil Practice Law and Rules,

against

CITY OF NEW YORK and NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, Respondents.

116942-02

For petitioners: Mercedes Maldonado, Esq., Koehler & Isaacs, LLP, 120 Broadway - 29th Floor, New York, New York 10271. For respondents: Magda Deconinck, Esq., % NYC Corporation Counsel, 100 Church Street, New York, New York 10007





Free Consultation
**917-551-1300**

HOME    PRACTICE AREAS    RESOURCES    ATTORNEYS    NEWS    ABOUT    CONTACT

 Share

**INJURED?**
We can help you  Read about the multimillion dollar verdicts and settlements achieved on behalf of our clients

**Read More**

Contact Us Today

Name

Phone

Email

Type your message here (Note  Messages sent using this form are not considered private  Avoid sending highly confidential or private information via email )

**Submit**

Subscribe To Our Newsletter

Email

**Submit**

**Follow Us**

 

# NYC Correction Officer Prevails in Lawsuit Against the City of New York

*In Dispute Over Retirement Requirements, New York State Supreme Court Judge's Decision Says Collective Bargaining Agreement's 'Years of Service' Language Is 'Ambiguous' and Open to Multiple Interpretations*

Read the complete decision

New York, New York June 30, 2004 - In response to an Article 78 lawsuit filed by The Correction Officers' Benevolent Association, on behalf of New York City Correction Officer, David McGarrigle, against the City of New York , State Supreme Court Justice Rosalyn Richter has ruled that the New York City Employees' Retirement System (NYCERS), must re-calculate Officer McGarrigle's pension benefit, prospectively and retroactively, so as to include the calculation of "final average salary", the longevity payments earned by him upon his completion of five and ten years of correction service

In 2001, after having served as a Correction Officer for nineteen years and three months, Mr  McGarrigle purchased nine months of prior military service rendered from November 1974 through August 1975  On August of 2001, Mr  McGarrigle retired from the Department of Correction with the requisite twenty years of service, nine months of which constituted "bought back" prior military service  However, in calculating Mr  McGarrigle's "wages earned", for the purpose of determining his "final average salary", NYCERS did not include the longevity payments earned by Mr  McGarrigle upon reaching his fifth and tenth years of correction service  In his lawsuit, Mr  McGarrigle challenged NYCERS' decision to exclude the longevity payments, and contended that NYCERS' determination violated the provisions under Retirement and Social Security Law as well as the Pension Impairment Clause of the New York State Constitution  NYCERS argued that the non-pensionability of the longevity increments was mandated by the collective bargaining agreement between the Correction Officers' Benevolent Association, Mr  McGarrigle's union, and the City of New York

According to Mr  McGarrigle's attorney, Mercedes Maldonaldo, of Koehler & Isaacs LLP, "The central issue at hand in this case was whether the language in the collective bargaining agreement could diminish a Correction Officer's right to have military service credit and other types of credited service count towards the years of service required for pensionability of longevity earnings  The judge confirmed that a Correction Officer can in fact use credited service such as military service without forfeiting the pensionability of their longevity earnings  This decision may have widespread implications among other uniformed unions who have similar language in their collective bargaining agreements "

"This decision is a victory for all New York City Correction Officers," said Norman Seabrook, president of the 9,000 member Correction Officers' Benevolent Association  "The City has tried unsuccessfully to manipulate the language in our collective bargaining agreement to reduce our officers' pension benefits  This union will continue to look after our members' financial interests "

The city now has 30 days to appeal the court's decision

*Koehler & Isaacs LLP is a full service law firm located in New York, New York and Newark, New Jersey. We offer our clients a range of legal services throughout New York including Westchester, Ulster, Rockland, Dutchess, and Nassau Counties.*

© 2016 Koehler & Isaacs LLP  |  Attorney Advertising
61 Broadway, 25th Floor, New York, NY 10006 | Phone: 917-551-1300
26 Ferry Street, Suite 1, Newark, NJ 07105 | Phone: 862-240-1900
Overview | Personal Injury | Labor & Employment | Criminal & Disciplinary | Federal Criminal | Real Estate | General Practice | Immigration | Matrimonial | Litigation
| | Resources | Attorneys | News



Attorney Website Design By
Amicus Creative

EXHIBIT  A-1

Jeffrey A. Dickstein, Bar Number 70638
Law Offices of Robert G. Bernhoft
207 E. Buffalo Street, Suite 600
Milwaukee, WI 53202
(414) 276-3333 telephone
Attorney for Joseph Banister

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No. S-04-435 WBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH BANISTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT BANISTER'S POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR BILL OF PARTICULARS

COMES NOW Defendant Joseph Banister (hereinafter "Banister"), by and

through his undersigned attorney of record, and respectfully submits these points and

authorities in support of his motion for a bill of particulars.  In support of said motion,

Banister makes the following showing:

Paragraph 9 of the indictment alleges there are unnamed and unknown co-

conspirators.  If any of the witnesses to be called by the government include any such

person, Banister needs to know in order to properly prepare cross-examination of that

witness.

The indictment generally talks about "income" taxes, "FICA" taxes, "social

security" taxes and "Medicare" taxes.  Assuming, based upon paragraphs 6, 7, 8 and 29

of the indictment, that reference is being made to taxes found in Chapter 21 and Chapter

1



RECEIVED
Mail Room

OCT - 5 2016

24 of Subtitle C. These chapters identify "income" taxes at 26 U.S.C. §§ 3101(a) and (b),

"excise" taxes at 26 U.S.C. §§ 3111(a) and (b), and just a "tax" at 26 U.S.C. § 3402. The

indictment appears to make no mention of other taxes contained in Subtitle C in Chapters

22 and 23. It also appears the indictment is calling the 26 U.S.C. § 3402 tax an "income"

tax despite the fact that Congress chose not to use the word "income" at section 3402 as it

did in sections 3101(a) and (b). The indictment also makes at paragraph 4 an allegation

as to the definition of "gross income," a definition contained in 26 U.S.C § 61 of the

Internal Revenue Code, which is contained in Subtitle A of the Internal Revenue Code,

known generically as "income taxes." Further, the indictment uses the words "income,"

"FICA" and "Medicare" taxes in paragraph 10 pertaining to co-defendant Thompson's

taxes as a self-employed sole proprietor, calling into questions various statutes in Subtitle

A pertaining not only to "taxable income," "adjusted gross income" and "gross income,"

but also "self-employment income." Banister is entitled to know exactly what taxes are

in issue and exactly what he is being charged with in order to prepare a proper defense.

Paragraph 9 of the indictment charges four functions of the Internal Revenue

Service that were impaired or impeded: the ascertainment, computation, assessment and

collection of taxes due and owing from the employees of Cencal and from Thompson.

Notwithstanding the allegations in the indictment that the illegal agreement of the

Defendants sought to impair these four specific functions of the I.R.S., it is still critically

important that those functions be defined and the statutory foundation for the

performance of them be identified. The essence of a conspiracy to defraud is the

obstruction of agency functions, thus proper analysis of such a charge requires finding the

statutory basis for the performance of those functions to determine the scope of the

alleged conspiracy.  Once that statutory basis is so identified, one must review the alleged

overt acts to make a determination as to whether any one of those acts was one

committed in furtherance of that carefully defined conspiracy.  *United States v.*

*Rosenblatt*, 554 F.2d 36 (2nd Cir. 1977); *United States v. Mollica*, 849 F.2d 723 (2nd Cir.

1988).  Therefore, to give some connection to federal statutes to the word "defraud," the

functions of the agency must be described by statute, regulation, or delegation order.

*United States v. Porter*, 591 F.2d 1048 (5th Cir. 1979).  Banister is entitled to know what

these statutes and/or regulations are to prepare his defense and to avoid surprise at trial.

WHEREFORE, Defendant Joseph Banister moves this Court for an order

requiring the Plaintiff to file a bill of particulars.

Dated: May 20, 2005.

The Law Office of Robert G. Bernhoft, S.C.


By:   /s/ Jeffrey A. Dickstein
      Jeffrey A. Dickstein
      Attorney for Defendant Joseph Banister

 **NYCERS**
N.Y.C. Employees' Retirement System

| Mail completed form to: | or | Visit Client Services |
|---|---|---|
| 335 Adams Street, Suite 2300 | | 340 Jay Street |
| Brooklyn, NY 11201-3724 | | Brooklyn, NY 11201-3724 |
| www.nycers.org | | (347) 643-3000 |

*EXHIBIT B*

## Federal Income Tax Withholding Change -- W-4P
[Print clearly in CAPITAL letters. See reverse for information and instructions.]

PENSION #

LAST - SSN

DATE OF BIRTH

FIRST NAME **S H A P A T**

MIDDLE INITIAL  **A**

LAST NAME **N A B A Y A**

**1** ADDRESS IS FOREIGN

ADDRESS **P O   B O X   5 0 3 6 4**

APT           CITY **R I C H M O N D**

STATE **V A**     ZIP CODE **2 3 2 5 0**     DAYTIME PHONE # **( 7 1 8 ) 7 4 9 4 8 9 8**

EMAIL

**[Choose your tax-withholding option below. Place an X or a number in the box(es) to indicate your choice(s).]**

### DO NOT WITHHOLD TAX

**2**    DO NOT WITHHOLD FEDERAL TAX    ✗

[ Complete this section if you do not want NYCERS to withhold any Federal income tax from your pension payments. If you check this box, DO NOT COMPLETE Section **3** or **4** below. ]

**OR**

### WITHHOLD TAX BASED ON EXEMPTIONS

**3** NUMBER OF ALLOWANCES (REQUIRED)    NUMBER OF ALLOWANCES YOU ARE CLAIMING

[Enter total number of allowances (exemptions) and your marital status. If you would like to withhold an additional amount, enter the amount in Section **4** .]

MARITAL STATUS (REQUIRED)    SINGLE    OR   MARRIED    OR   MARRIED, BUT WITHHOLD AT HIGHER SINGLE RATE

**4** ADDITIONAL AMOUNT (OPTIONAL)    ADDITIONAL AMOUNT TO WITHHOLD PER MONTH

[ If you enter an amount here,  you must also complete Section **3** above.]

OCT - 5 20

Mail Room

---

I have completed this form and represent that all information is true and accurate.

SIGNATURE *Shapat Nabaya*     DATE (MM/DD/YYYY) **9/22/2016**

---

### This form must be acknowledged before a Notary Public or Commissioner of Deeds

State of _____ County of _____ On this ____ day of 20__ , personally appeared before me the above named, _____ , to me known, and known to me to be the individual described in and who executed the foregoing instrument and he or she acknowledged to me that he or she executed the same, and that the statements contained therein are true.

Signature of Notary Public or Commissioner of Deeds

Official Title  *Notary Public*

Expiration Date of Commission _____

If you have additional ...

**FAH M WILLIAMS**
**NOTARY PUBLIC 7656146**
**COMMONWEALTH OF VIRGINIA**

R 08/06/15



EXHIBIT C

## CIC SERVICES LLC
*A Captive Management Company*

### IRS Loses Another Case With Bearing On The Captive Insurance Industry – The RVI Guaranty Case

Home / Captivating Thinking / IRS Loses Another Case With Bearing On The Captive Insurance Industry – The RVI Guaranty Case

Previous   Next

Search . .

Sign Up for Captivating Thinking

Your Email (required)

[                    ]   Send

Captivating Thinking

The Cure For Insurance Hater's Syndrome

Congress Passed 831(b) Because of an Economy Wide Insurance Crisis

The Power of BOTH – AND Thinking – Turn Sunk Costs Into Sunk Profits

Which Has Greater Audit Risk – A Captive Insurance Company Or A Qualified Retirement Plan?

Insuring Against The Two-Headed Monster

Archives

September 2016

August 2016

July 2016

June 2016

May 2016

April 2016

March 2016

February 2016

January 2016

## IRS Loses Another Case With Bearing On The Captive Insurance Industry – The RVI Guaranty Case



Last week, the IRS lost what is at least its third major insurance case in two years in U.S. Tax Court. The case is titled *R.V.I. GUARANTY CO., LTD. & SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent,* and it comes on the heels of two major losses in captive insurance cases in 2014, Rent-A-Center (CLICK HERE) and Securitas (CLICK HERE).

While RVI Guaranty was not a captive insurance company, this decision has significant bearing on the captive insurance industry. The Tax Court answered two key questions in its opinion, and both answers undercut arguments the IRS frequently makes when attacking self-insurance arrangements, captive insurance companies and other non-traditional insurance companies. The first question is, "What constitutes real insurance?" And, the second is, "Who gets to decide what constitutes real insurance?"

### Brief Overview Of The Case

The U.S. Tax Court held its trial in R.V.I. Guaranty Co. Ltd. v. Commissioner (IRS) to decide whether residual value insurance policies are insurance for federal income tax purposes. R.V.I. Guaranty Co. Ltd. (RVI), argued that its insurance policies in question fit into the insurance regulatory framework. RVI is an insurer that offers residual value insurance, which protects insureds' property from unexpected declines in value over the life of a contract. Specifically, RVI insures taxpayers engaged in the business of leasing passenger vehicles, commercial real estate, and commercial equipment. Under the contracts, RVI is obligated to pay the insured the excess of the predicted residual value of the protected asset over the fair market value at the end of the lease.

OCT – 5 2016
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia
Mail Room

In 2012 the IRS had issued a notice of deficiency to RVI for 2006 alleging a $55 million underpayment in taxes. The IRS argued the insurance contracts were not insurance for federal tax purposes. RVI argued that all state courts that have addressed whether residual value insurance is insurance for state regulatory purposes have decided that it is insurance. The IRS argued that residual value insurance covers a loss in expectation, which is not an insurance risk. The Service argued that the case revolves around "pure risk" and "speculative risk." The Service also argued that risk distribution generally requires the law of large numbers and does not exist in these types of policies because the types of events that would cause a payout would affect all insureds, not just a few of them. The Court rejected the Service's arguments and delivered an opinion in favor of the tax payer.

To read the entire case, CLICK HERE.

<u>Arguments Considered By The Tax Court</u>

<u>*What Constitutes Real Insurance?*</u>

The IRS argued that residual value insurance is not insurance, at least under the circumstances of this case. Its reasoning as to why is important to owners of captive insurance companies (CICs) because the IRS sometimes attacks CICs using the same lines of attack.

First, the IRS argued that no true insurance arrangement existed because there was no transfer of meaningful risk from the insured to the insurance company. As it often does in cases involving captive insurance companies, the IRS argued that the insurance company's low claims frequency, or low "claims ratio" over several years evidenced that RVI assumed insufficient risk. The court dismissed this argument on both theoretical and practical grounds. The court's theoretical argument was short, simple, and extremely important:

> Both parties' experts analogized the RVI policies to "catastrophic" insurance coverage, which insures against earthquakes, major hurricanes, and other low-frequency, high- severity risks. **An insurer may go many years without paying an earthquake claim; this does not mean that the insurer is failing to provide "insurance." [The IRS's expert] Mr. Barrett acknowledged that, under many catastrophic coverages, the odds of a loss occurring may be quite low. He was aware of no instance in which an insurance regulator had determined that the risk of loss on a policy of direct insurance was too "remote" for the product to be treated as "insurance." And respondent offers no plausible metric by which a court could make this assessment.**

In short, the court stated unequivocally that, when it comes to insuring low-frequency but high-severity risks, frequency of claims and low claims ratios have very little probative value in determining the legitimacy of the insurance arrangement. Neither is a "plausible metric" that supports the IRS' argument. Low frequency risks are clearly the proper subject of insurance, and "going many years without paying...a claim" under such policies is to be expected of insurers of these risks. The court's conclusion on this point explicitly contradicts one of the IRS' theories of attack against captive "risk pools"—that low claims ratios or low claims frequency is de facto evidence of a sham.

Second, the IRS argued that RVI did not insure "pure" risks but rather only "speculative risks" (sometimes called "business risks" by the IRS) OR "investment risks" neither of which are, the IRS argued, properly the subject of real insurance arrangements. This is consistent with the IRS' position in its 2015 "Dirty Dozen" listing where the Service cautioned taxpayers to be careful of captive insurance companies that issue "policies to cover ordinary **business risks**" as opposed, presumably, to those that cover "pure risks."

But neither the court nor the IRS' experts could come up with any principled means of distinguishing between "pure" risk and the other more "speculative" or "investment" types criticized by the IRS in the case and its "Dirty Dozen" release. The court concluded:

> In any event, we find respondent's attempt to distinguish between a "pure risk" and a "speculative risk" in this setting as essentially metaphysical in nature.

When the court calls your argument "metaphysical", you can be sure that you are going to lose. And lose the IRS did. The court concluded:

November 2015

October 2015

September 2015

August 2015

July 2015

June 2015

May 2015

April 2015

March 2015

February 2015

January 2015

December 2014

November 2014

October 2014

September 2014

August 2014

July 2014

June 2014

May 2014

April 2014

March 2014

February 2014

January 2014

December 2013

November 2013

October 2013

September 2013

August 2013

July 2013

*[The IRS's] efforts to split hairs by disentangling the causes of "loss" are philosophically interesting. But we do not think they carry much weight in determining whether the RVI policies constitute "insurance" for Federal income tax purposes.*

Regarding whether "investment risks" (as characterized by the IRS) are properly the subject of true insurance arrangements, the court settled things (hopefully) once and for all:

*Finally, [the IRS] urges that we find the RVI policies to entail mere "investment risk" by analogizing its policyholders to investors who have purchased put options to protect their stock. **The problem with this argument is that the insureds are not investors and the policies are not derivative products.** Investors invariably purchase stock in the hope that it will appreciate in value, enabling them to sell the shares for a capital gain. **The assets petitioner insured are not investment assets; in the hands of the lessors or finance companies, they are ordinary business assets in the nature of inventory or equipment. The insureds do not acquire these assets expecting them to appreciate in value and be sold to generate gain.***

*__Analogizing the RVI policies to put options, moreover, is little more than a simile.__ In the real world, put options are typically settled for cash rather than by actual transfer of the underlying shares. **At a conceptual level, many insurance products could be likened to put options.** A mortgage guaranty policy, for example, could be said to give the policyholder the right to put the mortgage loan to the insurer unless the insurer pays the insured the difference between the remaining balance of the loan (the strike price) and its value on the exercise date. **Even a fire insurance policy could be likened to a put on the fire-damaged house that is settled by the insurer's payment of the damage claim.***

*__For all these reasons, we reject [the IRS's] contention that the RVI policies involve an uninsurable "investment risk." These policies were designed and marketed as insurance products. Similar products were sold in the insurance market by other major insurance companies.__ These policies were undergirded by insurance strength ratings from the major insurance rating agencies. **For more than 80 years the courts have recognized that contracts insuring against the risk that property will decline in value can involve "insurance risk."** The types of events that cause losses under these policies closely resemble the events that cause losses under policies of mortgage guaranty and municipal bond insurance. **Most importantly, every State in which petitioner does business recognizes these policies as involving insurance risk and regulates them as "insurance."** Respondent is correct that these policies have some features that are atypical of what might be called "standard" insurance policies. But these differences are driven by the economics of the underlying business transaction and do not nullify the existence of "insurance risk."*

Finally, the IRS made its standard "homogeneity" argument (often used against CIC risk pools) suggesting that the pooling of different types of independent risks does not achieve risk distribution (an inherent element of any true insurance arrangement) because, according to the IRS, "the law of large numbers" does not apply in that context. The IRS argued that for risk distribution to occur, the risks pooled by the insurance company must be the same or very similar in nature—that is, homogenous.

The Court rejected the IRS's argument on this point, flatly noting the following:

*As we have explained previously, losses under RVI policies are caused by fortuitous events outside of its control. And its policies clearly do pool [such] risks to take advantage of the law of large numbers.*

The court concluded:

*The legal requirement for "insurance" is that there be meaningful risk distribution; **perfect independence of risks is not required.** See Rent-A-Center, Inc. & Subs. v. Commissioner, 142 T.C. 1, 24 (2014) ("**Risk distribution occurs when an insurer pools a large enough collection of unrelated risks (i.e., risks that are generally unaffected by the same event or circumstance");** Harper Group, 96 T.C. at 55, 59-60 (finding sufficient risk distribution where insurer insured **numerous unrelated insureds even though the risks "were not statistically independent * * *,but rather were highly correlated");** Gulf Oil Corp., 89 T.C. at 1025 n.9 (**stating that sufficient risk distribution may exist if risks are independent "to some minimum extent").** We have **no difficulty** concluding, as respondent's expert Mr. Cook ultimately did, that the RVI policies accomplish sufficient risk distribution to be classified as "insurance" for Federal tax purposes.*

June 2013

May 2013

April 2013

March 2013

February 2013

January 2013

December 2012

November 2012

October 2012

September 2012

Thus the court stuck a dagger in the heart of the IRS fallacious argument, often launched at captive risk pools, that true insurance arrangements only pool "homogeneous" risks. In the court's mind, a pooling of unrelated risk is sufficient to achieve risk distribution, at least in some contexts.

### Who Decides What Constitutes Real Insurance?

Consistent with both the Rent-A-Center and Securitas cases, the Court once again showed great deference to the determination of domicile regulators on these issues and the determination of what constitutes valid insurance. In deciding whether risk transfer occurred in the RVI case, the court said:

> *[The IRS's expert] was aware of no instance in which an insurance regulator had determined that the risk of loss on a policy of direct insurance was too "remote" for the product to be treated as "insurance." And respondent offers no plausible metric by which a court could make this assessment.*

In deciding that certain types of investment risk are properly the subject of valid insurance arrangements, the court noted:

> *Most importantly, every State in which petitioner does business recognizes these policies as involving insurance risk and regulates them as "insurance."*

Why did the court give such deference to state regulators in defining insurance? Well, the court tells us why:

> *Congress has delegated to the states the exclusive authority (subject to exception) to regulate the business of insurance." AMERCO, 96 T.C. at 42 (citing the McCarran-Ferguson Act, 59 Stat. 33, as amended, 15 U.S.C. secs. 1011-1015 (1998)). We have repeatedly emphasized the significance of State insurance regulation in determining whether an entity should be recognized as an "insurance company." See Sears, Roebuck & Co. v. Commissioner, 96 T.C. 61, 101 (1991), aff'd in part, rev'd in part, 972 F.2d 858 (7th Cir. 1992); Harper Group, 96 T.C. at 60; AMERCO, 96 T.C. at 42; Securitas Holdings, T.C. Memo. 2014-225, at \*5-6.*

The "exclusive authority" vested in the states to "regulate the business of insurance" almost certainly includes (within reasonable limits) the ability to define the term, else that authority is largely meaningless.

And this may be the most significant and under appreciated (so far) import of the court's ruling: The court's reliance on state regulators in this case was so extensive and so consistent that one might be forgiven for concluding that the burden of proof in such matters has now shifted to IRS. Where the taxpayer makes out a prima facie case demonstrating that the states have characterized a certain arrangement as one of "insurance," or a certain corporation as a "insurance company," the IRS will seemingly be required to offer up much evidence to prove the contrary. In this case it was not up to the challenge.

### Conclusion

The RVI Guaranty Case is a significant win for the taxpayers, captive insurance companies and businesses that are served by non-traditional risk management approaches. The ruling by the Court is broadly worded and completely undermines the IRS' attempts to draw an artificial distinction between "insurance" risks on one hand and "business" or "speculative" or "investment" risks on the other. The ruling also bolstered the position of many re-insurance (or risk distribution) pools commonly employed by small captive insurance companies. Finally, it is clear that insurance policies and companies approved by state insurance regulators will, in the absence of significant proof to the contrary, generally be respected by the Tax Court. A well-managed captive insurance company in a well-regulated domicile is clearly on an even stronger footing today than it was two weeks ago.

By CIC Services LLC | October 1st, 2015 | Captivating Thinking | 0 Comments

EXHIBIT C

# Morgan Le

**Our Practice**  **Our People**  **Our Thinking**

Home > Our Thinking > Publications >
IRS Loses Major International Tax Case: Ninth Circuit Changes Course, Affirms Decision in

OCT - 5 2016

Angela ..........
U.S. District Court, District of Columbia

## LAWFLASH

# IRS LOSES MAJOR INTERNATIONAL TAX CASE: NINTH CIRCUIT CHANGES COURSE, AFFIRMS DECISION IN XILINX

March 23, 2010

In a decision filed on March 22, the U.S. Court of Appeals for the Ninth Circuit reversed course and affirmed the U.S. Tax Court's decision in favor of the taxpayer in *Xilinx, Inc. v. Commissioner of Internal Revenue*. *Xilinx* is perhaps the most closely watched tax case of the last decade. The Ninth Circuit had

IRS Loses Major International Tax Case. Ninth Circuit Changes Course. Affirms Decision    Page 2 of 4

Case 1:16-cv-01987-CKK   Document 1   Filed 10/05/16   Page 20 of 47

previously decided in favor of the Internal Revenue Service (IRS), but after a flood of criticism from the tax community, the Ninth Circuit subsequently withdrew its opinion.[1]

The March 22 decision appears to be a significant victory for taxpayers and a major loss for the IRS. The opinion affirms the primacy of the arm's length standard as a foundation of the United States's transfer pricing regime and rejects the IRS's attempt to interpret its own rules in conflict with the arm's length standard. In this regard, the case once again calls a broader issue to the forefront- whether IRS's current cost sharing regulations at Treas. Reg. § 1.482-7T, which were specifically designed to rewrite the arm's length standard in the context of cost sharing arrangements, constitute an abuse of the IRS's regulatory authority.

The appellate case in *Xilinx* involved whether the expense associated with employee stock options must be shared by parties to a cost sharing arrangement. The Ninth Circuit found that there was a conflict in the applicable regulations: Treas. Reg. § 1.482-1(b)(1) provides that the standard to be applied in every case is that of parties acting at arm's length, while Treas. Reg. § 1.482-7(d)(1) states that *all* costs must be shared, regardless of whether unrelated parties would share those costs. The conflict arose because the taxpayer presented evidence at trial that unrelated parties would not in fact share any amounts associated with stock option expense.[2]

The central issue involved in resolving the conflict, as framed by Judge Noonan writing for the majority, was whether the court should rule that the specific provision (regarding costs that must be shared) overrules the general regulation (regarding the arm's length standard) or whether the court should rule consistent with the purpose of the regulations. The court chose the latter.

The opinion states that the purpose of regulations is "paramount." The purpose of the regulations at issue, the court observed, is tax

"parity between taxpayers in uncontrolled transactions and taxpayers in controlled transactions." The court found that this purpose would be frustrated if the IRS were permitted to trump the arm's length standard in certain circumstances. In particular, the court noted that "[i]f Xilinx cannot deduct all its stock option costs, Xilinx does not have tax parity with an independent taxpayer."

In addition, the court looked to the tax treaty between the United States and the Republic of Ireland for purposes of determining the Treasury Department's "mind and practice," and found that the Technical Explanation to the treaty refers to section 482 of the Internal Revenue Code as reflecting the arm's length standard. Because the purpose of the section 482 regulations is to place related parties at arm's length, the IRS cannot be permitted to override this rule with a specific rule reaching a non-arm's length result. Query the impact of this theory with respect to the IRS's "platform intangible" concept as reflected in Temp. Treas. Reg. § 1.482-7T.

In an interesting concurrence, Judge Fisher (whose vote changed from the earlier decision) noted that Xilinx's interpretation of the regulations led to a conflict in the regulations, whereas the IRS's interpretation viewed the regulations as consistent. Nonetheless, Judge Fisher believed that Xilinx's interpretation was "more reasonable" and was specifically "troubled by the complex, theoretical nature" of the IRS's arguments. Judge Reinhardt dissented on many of the same grounds that gave rise to the Ninth Circuit's original decision, which was written by Judge Fisher.

The Ninth Circuit's opinion will have a dramatic impact on virtually all transfer pricing issues, regardless of whether those issues involve cost sharing. The majority's opinion specifically found that there was a conflict in the regulations and that the arm's length standard controlled. Thus, much to the IRS's chagrin, evidence of what unrelated parties actually do will remain a staple of any section 482 analysis.

The Ninth Circuit's decision also curtails the IRS's ability to promulgate rules[3] in the transfer pricing arena mandating a certain result without due consideration for what unrelated parties actually do. Arm's length results cannot be achieved by fiat. Taxpayers now have a strong arrow in their quivers with which to respond to adjustments that are not based on actual transactions between unrelated parties.

*If you have any questions or would like more information on any of the issues discussed in this LawFlash, please contact any one of the following members of the Morgan Lewis Tax Practice:*

## San Francisco/Palo Alto
Barton W. Bassett
William F. Colgin, Jr.
Neal A. Gordon

[1] Read more about the Ninth Circuit's previous decision in our January 13, 2010 LawFlash, "Cautious Optimism as Ninth Circuit Withdraws Xilinx Decision," available at http://www.morganlewis.com/pubs/Tax_XilinxDecision_LF_13jan10

[2] The Ninth Circuit did not address the issue of whether amounts associated with stock option expense were in fact "costs."

[3] Or further, to mandate a certain result on audit before such rules are promulgated, then promulgate them as a "clarification."

**CONTACT US**      **CLIENT ACCESS LOGIN**

Terms of Use and Privacy Policy      How we use cookies



# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com

http://www.wsj.com/articles/the-irs-loses-in-court-again-1470607845

OPINION | REVIEW & OUTLOOK

# The IRS Loses in Court Again

An appeals panel revives bias cases the agency tried to kill.

Aug. 7, 2016 6:10 p.m. ET

The IRS has so far evaded accountability for its political targeting of conservative groups, but the courts haven't been forgiving when they've considered the issue. On Friday the D.C. Circuit Court of Appeals gave the agency its latest comeuppance, reviving lawsuits by dozens of groups discriminated against by the IRS.



In a 22-page ruling by Judge David Sentelle, a unanimous three-judge panel ruled that since it is "plain" to all parties including the Treasury Inspector General and a lower federal court that the IRS "cannot defend its discriminatory conduct on the merits, the governing issue is now whether the controversy is moot. The district court held that it was; we conclude that it is not."

To establish mootness, Judge Sentelle said the IRS had to show there is "no reasonable expectation" that the targeting will happen again and that events since have fully healed the negative effect of the violation. That clearly hasn't happened since even the IRS has admitted that some tax-exempt applications caught in the targeting *still* haven't been processed.

RELATED ARTICLES

- The Dissembling IRS
- The IRS Loses Again
- The IRS Goes to Court

While the agency has said that "no more than two" applications for exemption are still delayed, the court wrote, "We would advise the IRS that a heavy burden of establishing mootness is not carried by proving that the case is nearly moot, or is moot as to a 'vast majority' of the parties."



Even worse, the court notes, is the IRS's "puzzling" argument that the pending applications don't really count because they are from groups that are "in litigation" with the Justice Department over IRS viewpoint discrimination. "It is not at all clear why the IRS proposes that not ceasing becomes cessation if the victim of the conduct is litigating against it. The IRS position is reminiscent of Catch-22 from the novel of the same name."

The court's opinion applies to *Linchpins of Liberty et al. v. U.S.* as well as *True the Vote, Inc. v. IRS.* The decision remanded the cases to the district court for further proceedings but the Obama Administration may further delay discovery by appealing to the full D.C. Circuit, which the White House has stacked with friendly judges. Stay tuned.

Copyright 2014 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law  For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.

THE POWER TO DESTROY

# IRS LOSES CHALLENGE TO PROVE TAX LIABILITY

Lawyer is acquitted after arguing
income levy lacks legal foundation

Published 07/26/2007 at 1 00 AM



**BOB UNRUH (HTTP://WWW.WND.COM/AUTHOR/RUNRUH/)**   About | Email
(mailto runruh@wnd com) | Archive (http //www wnd com/author/runruh/?archive-true)

Subscribe to feed (http //www wnd com/author/runruh/feed/)

ADVERTISEMENT

Small Business Tax Prep

padgettbusinessservices.com/Taxes
Tax Prep for Small Businesses. Contact Us for a Consultation

The Internal Revenue Service (http://www.wnd.com/redir/r.asp?
http://www.irs.gov/localcontacts/index.html) has lost a lawyer's challenge in front of a jury to prove a
constitutional foundation for the nation's income tax, and the victorious attorney now is setting his
sights higher

IRS Tax
Forgiveness

tax.debt.irsrelief.org

Back Taxes? Liens?
Collections? You
may Qualify for Tax
Relief.

"I think now people are beginning to realize that this has got to be the
largest fraud, backed up by intimidation and extortion and by the sheer
force of taking peoples property and hard-earned money without any
lawful authorization whatsoever," lawyer Tom Cryer told WND just days
after a jury in Louisiana acquitted him of two criminal tax counts.

And before you consign him to the legions of "tin foil hat brigades" who
argue against paying taxes, and then want payment to explain how to
do that, he addresses the issue up front.

"These snake oil peddlers have conned millions of dollars out of many
well-intended patriots and left a trail of broken lives in their wake. ...
These charlatans should be avoided, not only because they will lead
you to bankruptcy and prison, but because by association they
discredit those who are telling the truth," he said.

The truth, he said, is where he comes in, with the launch of a new
Truth Attack (http://www.wnd.com/redir/r.asp?
http://www.truthattack.org/) website that is intended to build on his
victory, and create a coalition of resources to defeat – ultimately – the
income tax in the United States.

Although the legal
citations in the case tend
to run the length of
paragraphs, Cryer told
WND the underlying issue
is not that complicated.
Essentially, he argued that
income is not necessarily any money that comes to a
person, but rather categories such as profit and interest.

He said the free exchange of labor for compensation
has been upheld as a right by the Supreme Court, but
that doesn't necessarily make the compensation
income.



The logo for the new Truth Attack campaign against
income taxes

If ever such an argument were to be presented widely, Cryer said, the income to the federal
government would plummet. But not to worry, he said, the expenses could be reduced equally by
eliminating programs, departments and agencies that also have no foundation in the Constitution.

RECEIVED
Mail Room

OCT - 5 2016

Angela ... Clerk of C...
S. District Court District of Co...

"The Founding Fathers intentionally restricted the taxing powers of the new federal government as a measure of restraint on its size. By exceeding that limited taxing authority the federal government has been able to obtain resources beyond its intended reach, and that money has enabled the federal government to exceed its authority," he said.

VIDEO: OPINION JOURNAL: WHAT IS THE IRS HIDING?



For example, he said, the Constitution does not empower the federal government to regulate education, or employment, and agriculture, yet it does so.

The jury in U.S District Court in Louisiana voted 12-0 to find Cryer, of Shreveport, not guilty of failure to file income taxes for two years. He had been indicted in 2006 on charges of failing to pay $73,000 to the IRS in 2000 and 2001. The next step in his personal case will be up to the IRS and prosecutors, if they choose to continue the issue, he said.

But for the rest of the nation, he's working with Save-a-Patriot, (http://www.wnd.com/redir/r.asp? http://www.save-a-patriot.org/) the Free Enterprise Society, (http://www.wnd.com/redir/r.asp? http://freeenterprisesociety.com/) Live Free Now (http://www.wnd.com/redir/r.asp? http://www.livefreenow.org/) and his own Lie Free Zone (http://www.wnd.com/redir/r.asp? http://www.gcstation.net/liefreezone/) to spread the message of the truth.

"There are three points that are important," he told WND. "There's no law making the average working man liable [for income taxes], there's no law or regulation that allows the IRS to contend that earnings are 100 percent profit received in exchange for nothing, and the right to earn a living through any lawful occupation is a constitutionally protected fundamental right, and it is exempt from taxation."

Spokesman Robert Marvin in Washington's IRS office told WND the Internal Revenue Code provides for taxation on salaries or wages, but when pressed for a specific citation, or constitutional provision, he said, "I can't comment."

Cryer's encounter with tax law began more than a decade ago when a friend told him the income tax was sham. Cryer started researching, hoping to keep his friend out of trouble. But his conclusions, after years of research, were exactly what his friend told him.

He researched not only tax laws, but also the documents pertaining to the drafting of the U.S. Constitution as well as the first income tax.

He said throughout his battle, he's offered at every turn to pay taxes if the IRS could show him the authorization, and that never has happened.

"The Criminal Investigation Division and Department of Justice both responded only with 'your position is frivolous.' I had never stated a position, so how could they know whether it was frivolous?" he said. "Imagine my sending you a bill for $1,000 and when you call me and ask what the bill was for I simply said, 'that position is frivolous, just write the check and send it in.'"

His acquittal, he said, was a precedent because it means "people can see and recognize the truth."

He said multiple Supreme Court opinions have affirmed an individual's ownership of his or her own labor, and "exercising your fundamental rights" is not taxable. "It is definitely a trade. What most people receive in the form of wages, salaries or in my case fees that they personally earned for their labor is not received in exchange for nothing."

He said there might be a profit that should be taxable, but there might not.

"The IRS lets Wal-Mart sell a trillion dollars worth of goods, but they can back out their cost of goods [before being taxed,]" he said. "The IRS considers, in the case of a Wal-Mart wage earner, 100 percent of what he takes in is profit."

"But he's using his life, energy and work lifespan, and depleting it as he goes," Cryer told WND. "[Working] is a God-given fundamental right that is protected under the Constitution and can't be taxed any more than exercising freedom of speech."

While he waits to see what, if anything, the IRS and Justice Department will do next in his case, he's working to coordinate the groups that are battling taxation as unconstitutional

"I have started a campaign to unify [the work] and we've got a number of organizations that are sponsoring and supporting this campaign," he said. The goal is to get everyone "who is aware of the truth" organized so they can spread the word.

He warned without a restoration of constitutional basics, the nation is lost

"Read your Constitution and you will see that the federal role does not include ANY authority to regulate or tax any citizen directly and that WE expressly reserved the right to rule and govern ourselves as States, not as mere political subdivisions," his website says.

"The Constitution does not allow the government to run your lives, but the money it is stealing from millions of Americans is the fuel for its over-reaching and kibitzing. Take the money back and we and our states and communities can again be free," he said.

The fight is over "our FREEDOM from rule by a DISTANT RULER, just as we fought to free ourselves of a distant England over 200 years ago," he said

If you would like to sound off on this issue, participate in today's WND Poll (http://www.worldnetdaily.com/polls/)

**Related special offers:**

"Tax Revolt: How Americans are challenging the IRS and the 16th Amendment" (http://superstore.wnd com/store/item.asp?ITEM ID=156)

**Previous stories:**

Bench warrant issued for N.H. tax resister (http://www wnd com/news/article.asp? ARTICLE ID=53862)

'Dr. Dino' convicted in Florida tax fraud trial (/news/article asp?ARTICLE ID=52983)

Creationist 'employed by God' charged with tax fraud (/news/article.asp?ARTICLE ID=51236)

Film challenges the Fed, income tax (/news/article.asp?ARTICLE ID=49267)

Tax crusader Irwin Schiff found guilty on all counts (/news/article.asp?ARTICLE ID=47027)

Tax activist wins in federal court (/news/article.asp?ARTICLE ID=44956)

Tax activist faces charges (/news/article.asp?ARTICLE ID=41686)

IRS 'enforcers' target ex-agent (/news/article.asp?ARTICLE ID=37750)

Fed 'strike force' targeting tax reformers? (/news/article.asp?ARTICLE ID=34553)

IRS colluding with states? (/news/article.asp?ARTICLE_ID=34610)

Woman triumphs over IRS in tax case (/news/article.asp?ARTICLE_ID=34031)

Activist: 'Stop paying federal income taxes (/news/article.asp?ARTICLE_ID=30708)

National sales tax gains momentum (/news/article.asp?ARTICLE_ID=29637)

Tax reform still on group's agenda (/news/article.asp?ARTICLE_ID=26850)

'Truth in Taxation' forum ends in D.C. (/news/article.asp?ARTICLE_ID=26699)

Congressman cancels tax forum (/news/article.asp?ARTICLE_ID=26128)

Tax group urges Americans: 'Wait to file' (/news/article.asp?ARTICLE_ID=26048)

'Ghosts' group threatens IRS employees (/news/article.asp?ARTICLE_ID=24304)

Activists refute IRS claims (/news/article.asp?ARTICLE_ID=24154)

IRS bashes 'frivolous tax arguments' (/news/article.asp?ARTICLE_ID=24128)

The Tax Man is hiring (/news/article.asp?ARTICLE_ID=22372)

Activists challenge IRS using agency's rules (/news/article.asp?ARTICLE_ID=21899)

Are federal income taxes legal? (/news/article.asp?ARTICLE_ID=21745)

Nullifying the income tax (/news/article.asp?ARTICLE_ID=21498)

IRS special agent challenges system (/news/article.asp?ARTICLE_ID=17023)

**Related commentary:**

Free Ed and Elaine Brown! (http://www.wnd.com/news/article.asp?ARTICLE_ID=56223)



(http://www.wnd.com/2007/07/42749/print/) Print

taboola_utm_medium=bytaboola&taboola_utm_content=thumbs-2r:below-main-column:)
aboola_utm_medium=bytaboola&taboola_utm_content=thumbs-2r:below-main-column:) (http://www.wnd.com/2007/07/42749/print/)
aboola_utm_medium=bytaboola&taboola_utm_content=thumbs-2r:below-main-column:)
**YOU MAY LIKE**

(http://www.homesolarprograms.com/tab021/homeowners-are-furious-with-their-power-company/?
campid=04F0AD93589527F1&utm_source=Taboola)

**Thinking About Going Solar? Read This First**
Home Solar Quotes

(http://www.homesolarprograms.com/tab021/homeowners-are-furious-with-their-power-company/?
campid=04F0AD93589527F1&utm_source=Taboola)
(http://www.yourdailydish.com/galleries/father-and-son-take-the-same-photo-every-year-for-30-years/?
utm_source=Taboola&utm_medium=wnd&utm_content=http%3A%2F%2Fcdn.taboolasyndication.com%2Flibtrc%2Fstatic%
2Fthumbnails%2F0d1f803f223649a915e04bdaea5f5d8.png&utm_campaign=Taboola_FSSP)

**This Father and Son Took the Same Photo 28 Years in a Row, a...**
Your Daily Dish

(http://www.yourdailydish.com/galleries/father-and-son-take-the-same-photo-every-year-for-30-years/?
utm_source=Taboola&utm_medium=wnd&utm_content=http%3A%2F%2Fcdn.taboolasyndication.com%2Flibtrc%2Fstatic%
2Fthumbnails%2F0d1f803f223649a915e04bdaea5f5d8.png&utm_campaign=Taboola_FSSP)
(http://livesmarterdaily.com/?
id=584&subid=600&h1=rule&dt=dup&&td=584&id=584&subid=600&t=dup&utm_medium=wnd_thumbnail=http%3A%
2F%2Fcdn.taboolasyndication.com%2Flibtrc%2Fstatic%2Fthumbnails%2F474f906c70e5949752fd79e2149ae697.jpg)

**Secaucus, New Jersey Residents Are Stunned By This New Rule**
Provide-Savings Insurance Quotes

 *News*

Release Date: 2/13/14

# IRS Loses Appeal in RTRP Case

## Cross References
- *Loving,* U.S. Court of Appeals for the District of Columbia, February 11, 2014
- *Loving,* U.S. District Court for the District of Columbia, January 18, 2013

The IRS has lost its appeal in the case involving the IRS' attempt to impose the Registered Tax Return Preparer (RTRP) regulations on tax return preparers who are not Enrolled Agents (EAs), CPAs, or attorneys. The Court of Appeals said they agreed with the District Court that the IRS' statutory authority under Section 330 cannot be stretched so broadly as to encompass authority to regulate tax return preparers.

**Background.** In 2011, the IRS began regulating hundreds of thousands of unlicensed tax return preparers who prepare and file tax returns for compensation. The IRS regulations required each preparer to pass a qualifying exam, pay an annual application fee, and take fifteen hours of continuing-education courses each year. The IRS interpreted an 1884 statute as enabling them to regulate all tax return preparers.

Under Title 31 of the U.S. Code, Section 330, the Treasury Secretary has authority to regulate people who practice before the Treasury Department. As the IRS is a bureau of the Treasury Department, this statute covers practice before the IRS as well. Using this statutory authority, the IRS issued regulations under Circular 230 with a long list of duties and restrictions relating to practice before the IRS. These regulations have historically applied to attorneys, CPAs, Enrolled Agents, and other specified tax professionals. The 2011 revision to Circular 230 brought all tax return preparers under its coverage. The IRS estimated that the new rule would bring 600,000 to 700,000 new tax return preparers who were previously unregulated at the federal level.

Among other things, these new rules defined "practice" as a tax return preparer as including the preparing and signing of tax returns and claims for refund, and other documents for submission to the IRS.

**Lawsuit.** Three paid tax return preparers, who were not previously regulated by the IRS, brought a lawsuit against the IRS. Sabina Loving worked on the South Side of Chicago, serving low-income clients. Elmer Kilian had for decades prepared tax returns in his house. Giovanni Gambino was a financial planner who prepared tax returns for his clients. Loving declared that she would have to increase her prices if forced to comply with the rule, likely losing customers. Kilian and Gambino declared that they would likely close their tax businesses if forced to comply.

Seeking injunctive and declaratory relief, these plaintiffs sued the IRS, the Commissioner of Internal Revenue, and the U.S. government under the Administrative Procedure Act and the Declaratory Judgment Act.

**District Court opinion.** The District Court ruled that the IRS lacked statutory authority to issue and enforce regulations under Circular 230 concerning RTRPs, their requirement

to pass a competency test, and their requirement to take annual continuing education (CE). The judge also permanently enjoined the IRS from enforcing the regulations on other tax return preparers. In ruling against the IRS, the judge said the following:

- The text of Title 31 of the U.S. Code, Section 330 defines the practice of representatives in a way that does not cover tax return preparers.
- The IRS' interpretation would displace an existing statutory scheme that comprehensively regulates penalties on tax return preparers.
- Under the IRS' interpretation, a federal statute that remedies abusive practice by tax return preparers would be relegated to oblivion.

**Practice of representatives.** The IRS argued that Title 31 of the U.S. Code, Section 330 is ambiguous because it does not define representative or practice, and both terms can have broad meanings. The judge said although these terms are not defined, the statute does say what representatives do and what their practice is. The statute says representatives advise and assist persons in presenting their cases. Filing a tax return would never, in normal usage, be described as presenting a case because at the time of filing, the taxpayer has no dispute with the IRS. There is no case to present. Thus, Section 330 cannot apply to the preparation of tax returns.

**Conflicts with other statutes.** Title 31 of the U.S. Code, Section 330 allows the IRS to penalize and disbar practicing representatives for misconduct. However, there are also numerous statutes in Title 26 of the U.S. Code (also known as the Internal Revenue Code), that impose penalties for misdeeds by tax return preparers. The judge said if the IRS had open ended discretion under Section 330 to impose a range of monetary penalties on tax return preparers for almost any conduct the IRS chooses to regulate, those Title 26 statutes would be eclipsed. Thus, the federal statutes under Title 26 would lose all relevance.

**Invalid regulations.** The judge ruled the regulations invalid with regards to the three plaintiffs. The judge also ruled the public interest would be served by a permanent injunction against the IRS implementing these regulations.

**Court of Appeals opinion.** The Court of Appeals listed six reasons why the IRS' interpretation of the statute was wrong.

1) The IRS asserted that paid tax return preparers are representatives of persons. However, the term representative is traditionally and commonly defined as an agent with authority to bind others. In contrast, tax return preparers do not possess legal authority to act on the taxpayer's behalf. They cannot legally bind the taxpayer by acting on the taxpayer's behalf unless they obtain from the taxpayer a power of attorney. In addition, because tax return preparers are not representatives, the taxpayer must still sign and submit the return in his or her own name. The court noted that tax return preparers assist taxpayers, but they do not represent the taxpayer. Thus, the statute's use of the term representative excludes tax return preparers.

2) The IRS has long regulated service professionals such as attorneys and accountants who appear as representatives of taxpayers in adversarial tax proceedings before the IRS. The new regulations attempted to expand this act of "practice" to cover the simple act of preparing and signing tax returns. Although preparing and signing tax returns could be considered a practice of sorts, the statute addresses practice before

the Department of the Treasury. Even when the IRS disagrees with a taxpayer's determination of taxes due, the tax return preparer is not invited to present any arguments or advocacy in support of the taxpayer's position. The tax return preparer is not designated as a representative to act on the taxpayer's behalf until the taxpayer designates the return preparer during an audit or appeal.

3) Section 330 was originally enacted in 1884 as part of a War Department appropriation for horses and other property lost in the military service. The original language in the statute does not encompass tax return preparers (as there was no such industry at the time). In 1982, Congress recodified the statute and changed phrases from "agents, attorneys, or other persons representing claimants" to "representatives of persons." The title of this amending legislation said the 1982 Act was designed "to revise, codify, and enact" the amended provisions *"without substantive change."* This indicates Congress intended no change in the meaning of the statute, other than to simplify the phrases used.

4) Over the years, Congress has enacted a number of targeted provisions specific to tax return preparers, covering precise conduct ranging from a tax return preparer's failing to sign returns to knowingly understating a taxpayer's liability. Each statutory provision comes with a corresponding penalty. If the IRS already had the statutory authority to regulate tax return preparers under Section 330, then all of Congress's statutory amendments would have been unnecessary. The fact that multiple Congresses continue to enact specific statutes directed at tax return preparers indicates that Congress acts as though Section 330 does not apply to tax return preparers.

5) The Supreme Court has stated that courts should not lightly presume Congressional intent to implicitly delegate decisions of major economic or political significance to federal agencies. If the court were to accept the IRS' interpretation of Section 330, the IRS would be empowered for the first time to regulate hundreds of thousands of individuals in the multi-billion dollar tax preparation industry.

6) Until 2011, the IRS never interpreted the statute to give it authority to regulate tax return preparers. Nor did the IRS ever suggest that it possessed this authority, but simply chose in its discretion not to exercise it. In fact, in 2005, the head of the IRS' Criminal Investigation Division testified to Congress that "tax return preparers are not deemed as individuals who represent individuals before the IRS." At the same hearing, the National Taxpayer Advocate said, "The IRS currently has no authority to license preparers or require basic knowledge about how to prepare returns." In 2009, IRS Pub. 947, *Practice Before the IRS and Power of Attorney,* stated, "Just preparing a tax return or furnishing information at the request of the IRS is not practice before the IRS. These acts can be performed by anyone." The court said the IRS is surely free to change its interpretation of a statute it administers. However, given the circumstances of this case, it is telling that the IRS had never before maintained that it possessed this authority.

The court concluded by saying it might be that allowing the IRS to regulate tax return preparers more stringently would be wise as a policy matter. But that is a decision for Congress and the President to make if they wish by enacting new legislation. The role of the court is to apply the statute as it is written. The Appeals Court affirmed the judgment of the District Court.



article

learning

# IRS Loses in Court

**By:** **Bill Keller**
**Date:** **10/15/1993**
**Location:** <u>Learning Centre</u>: Law, Taxes

In an amazing court case involving the "income tax", a Chattanooga jury agreed with the argument by the defendant that the "income tax" is actually an "Excise Tax" and applies only to certain classes of people. [U.S. v. Long, Eastern District of Tennessee. CR 19391. October 15, 1993]

Nationally prominent attorney, Lowell Becraft of Huntsville, AL, assisted by attorney Russell J. Leonard of Sewanee, TN, defended Lloyd R. Long of Decherd, TN, who was charged by the Internal Revenue Service with willful failure to file income tax returns for the years 1989 and 1990.

In presenting the case for the Internal Revenue Service, assistant U.S. Attorney Curtis Collier, assisted by special agent Michael Greasley of the IRS, declared that Mr. Long had gross income in excess of $49,000 for each of the years 1989 and 1990, and that he had "willfully" failed to file income tax returns for those years as "required by law".

The defense admitted that Mr. Long did in fact have income in excess of $49,000 for each of the years in question, and that he did not file a return. He then proceeded to prove to the jury beyond a reasonable doubt that he was not "liable" for an income tax, nor was he "required by law" to file.

Defense testimony presented a case entitled Brushaber v. Union Pacific Railroad wherein it was the unanimous decision of the U.S. Supreme Court that the Sixteenth Amendment did not give Congress any new power to tax any new subjects; it merely tried to simplify the way in which tax was imposed. It also showed that the income tax was in fact an excise tax on corporate privileges and privileged

Search ▷
Lien
Records

Enter First
& Last
Name.
View Lien
Records
Online.

○   ○

RECEIVED
Mail Room

OCT - 5 2016

occupations. The defense then brought a case entitled Flint v. Stone Tracy, wherein an excise tax was defined as being a tax laid upon the manufacture, sale and consumption of commodities within the country; upon licenses to pursue certain occupations and upon corporate privileges. Mr. Long's attorneys also brought out a case entitled Simms v. Arehns, where in the court ruled that the income tax was neither a property tax nor a tax upon occupations of common right, but was an excise tax.

The defense then brought out a case entitled Redfield v. Fisher, wherein the court ruled that the individual, unlike the corporation, cannot be taxed for the mere privilege of existing, but that the individual's right to live and own property was a natural right upon which an excise cannot be imposed. Defense also noted studies done by the Congressional Research Service showing the Income Tax to be an Excise Tax.

Next, the defense noted that in a Tennessee Supreme Court case, Jack Cole v.Commissioner, the court ruled that citizens are entitled by right to INCOME or EARNINGS and that right could not be taxed as a privilege. In another Tennessee Supreme Court case, Corn v. For, the court ruled that individuals have a right to combine their activities as partnerships; and that this is a natural right, independent and antecedent of the government.

The prosecution did not challenge or attempt to refute any of the cases cited, or the conclusions of the courts.

Defense brought out in testimony the fact that nowhere in the entire Internal Revenue Code was anyone actually made liable for the income tax. The IRS's own privacy act notice cites only three sections, and none of these sections makes anyone liable for the tax. They also proved that this was not an oversight by showing that the alcohol tax was worded so clearly that no one could misinterpret who is made liable for the alcohol tax.

Prosecution did not challenge or attempt to refute this point, nor were they able to show a statute that made anyone liable for the income tax.

Defense then presented the mission statement of the Internal Revenue Service stating that the income tax

relied upon "voluntary compliance" and a statement from the head of the Alcohol and Tobacco Tax Division of the IRS which in essence showed that the income tax is 100% voluntary, as opposed to the alcohol tax, which is 100% enforced. Mr. Long stated that in 1988 he knew that: the income tax was in fact an excise tax; that he was not enjoying any corporate privileges nor engaged in any privileged occupation; that income or earnings from the exercise of common rights could not be taxed as an excise or otherwise; that nowhere in the Internal Revenue Code was he made liable for the tax and the income tax was voluntary. But Mr. Long was still so intimidated by the IRS that he filed and paid his voluntary assessment.

He then began a series of letters to the IRS explaining that he had no licenses or privileges issued to him by the federal government. He asked for direct answers to questions such as: "Am I required to file federal income tax returns?" and "Am I liable for federal income taxes?" The IRS never gave a direct answer to any of his questions. Instead they inferred and insinuated and extrapolated and beat around the bush, and generally avoided answering. So Mr. Long testified that he decided to stop "volunteering."

The IRS brought in two "expert" witnesses. Both were actually IRS employees who had received training as professional witnesses. Upon cross examination by Mr. Becraft, one witness, a Ms. Jeu, stated that a secret code known only to the this admission, to the point that she was beginning to frustrate the jury. The other witness, upon cross examination by Mr. Becraft, gave testimony that conflicted with the privacy act notice.

The government also attempted to insinuate "guilt by association" by claiming Mr. Long had known and relied upon persons of questionable character. They argued that the writers of some of the books he read, and people he knew, had been convicted of tax-related charges in the past and were in fact criminals.

Mr. Long responded that just because a person had been convicted of a crime by a court that did not invalidate everything he said. To illustrate his point, he pointed out that the Apostle Paul was a murderer, but that by the Grace of God he became the greatest of the Apostles. He added that he, Mr. Long, did not

rely on anything that he did not personally check out thoroughly.

In summation, Mr. Becraft reminded the jury that Galileo was imprisoned for holding a belief that conflicted with what everyone else knew was a "fact" and that Columbus, acting on a belief that conflicted with what everyone else knew was a "fact" discovered something no one else thought existed.

The jury agreed with the defense. By finding Mr. Long "not guilty" on all counts, they have ventured into uncharted territory in their monumental decision.

A Chattanooga TV station quoted the government spokesman as saying that this case will change the way the IRS will handle such cases in the future. They indicated that they (the government) will be less likely to prosecute if a jury isn't going to decide in their favor.

FOOTNOTE: A student of freedom seeking to repeat Mr. Long's success must be skilled at using a law library; this skill is not difficult to acquire. Note that Mr. Long thoroughly checked out all points that he later relied on. This whole exercise is one of self-responsibility, self-education and self-action.

**"A nation of well informed men who have been taught to know and prize the rights which God has given them cannot be enslaved. It is in the region of ignorance that tyranny begins." -- Benjamin Franklin**

This is an example of what can happen when the IRS steps into an actual court of law. Again the question is, "how can this be if the tax code is law??" Answer: In most applications, the tax code is not law unless you accept it as one, and apply it to yourself voluntarily.

Source: Phil Hamby, The Knoxville Journal
URL: http://www.chvanilla.net/freedomirsloses.html
Reports: Death and Taxes -- Inevitable?
Liberty Tree



**TELEMANAGE.ca**
(c) Copyright 2016



Login     Support the Cause

Get Registered     Get Voter ID     Join the Movement

Search

# TRUE THE VOTE WINS APPEAL IN IRS LAWSUIT

**5th of August 2016**

HOUSTON, TX. – August 5, 2016: True the Vote (TTV), the nation's leading voters' rights and election integrity organization, today praised the U.S. Court of Appeals for the District of Columbia's ruling in True the Vote v. IRS, reversing key rulings against the organization's prior claims and remanding the case back to trial.

The U.S. District Court for the District of Columbia originally dismissed True the Vote's lawsuit after finding that IRS targeting had fully ceased, therefore mooting TTV's civil rights claims based on assurances of internal reform from the tax agency. The appellate court panel reversed that finding in scathing detail:

"It being plain to the Inspector General, the district court, and this court that the IRS cannot defend its discriminatory conduct on the merits, the governing issue is now whether the controversy is moot. The district court held that it was; we conclude that it is not."

OCT = 5 2016

Angela D. Caesar, Clerk of Court
U.S. District & Bankruptcy

The difference between a ceased discriminatory scheme versus a 'restive' one:

"There is a difference between the controversy having gone away, and simply being in a restive stage. This difference gives rise to the concept of 'voluntary cessation.' That concept governs the case in which the defendant actor is not committing the controversial conduct at the moment of the litigation, but 'the defendant is 'free to return to [its] old ways'—thereby subjecting the plaintiff to the same harm but, at the same time, avoiding judicial review … Here, voluntary cessation has never occurred."

The 'absurd' belief that IRS has ceased its targeting of pro-liberty groups:

"It is absurd to suggest that the effect of the IRS's unlawful conduct, which delayed the processing of appellant-plaintiffs' applications, has been eradicated when two of the appellant-plaintiffs' applications remain pending."

On the dangers of letting the IRS skate based on a promise it has changed its ways:

"A violation of right that is 'suspended until further notice' has not become the subject of voluntary cessation, with no reasonable expectation of resumption, so as to moot litigation against the violation of rights. Rather, it has at most advised the victim of the violation – 'you're alright for now, but there may be another shoe falling'."

True the Vote welcomed the ruling as a positive step toward justice after its First Amendment rights were violated by the IRS, dating back to 2010.

"Today's ruling is a tremendous victory for True the Vote. We are now closer than we've ever been to revealing the collusions and cover-ups used in the weaponization of the IRS against the American People," True the Vote Founder Catherine Engelbrecht said. "This lawsuit has been a struggle every step of the way, but is a battle that must be fought. When a rogue government sets out to silence its citizens and deny them their Constitutional rights, we all suffer for it. No one should

Case 1:16-cv-01987-CKK   Document 1   Filed 10/05/16   Page 38 of 47

be subjected to what True the Vote was made to endure. Today our fight continues on behalf of all Americans."

The appellate ruling will leave seven days to pass before being sent back to the trial court – should the IRS wish to appeal to the full circuit for an en banc hearing. *THE IRS HAS NOT APPEALED THE RULING*

A copy of the opinion may be read, here.

True the Vote (TTV) is an IRS-designated 501(c)(3) voters' rights organization, founded to inspire and equip voters for involvement at every stage of our electoral process. TTV empowers organizations and individuals across the nation to actively protect the rights of legitimate voters, regardless of their political party affiliation. For more information, please visit www.truethevote.org.

###

*Press Releases*

**Share**

Case 1:16-cv-01987-CKK   Document 1   Filed 10/05/16   Page 39 of 47

# How You Can Help

## *Roll Up Your Sleeves and Get Involved.*

Join the movement and sign up for our Knowledge Network to get educated on the issues and opportunities to serve and connect with other citizen activists in your community.

Support True the Vote's efforts to keep our elections free and fair.

**Join the Movement**        *or*        **Support the Cause**

**Enter Your E-Mail**                 **Keep Me Posted**

# Stay in touch

You can support True the Vote and get current information, insights and updates on various social media platforms.

TRUE THE VOTE WINS APPEAL IN IRS LAWSUIT | True The Vote

**About**

**Resources**

**Register to Vote**

**Get Voter ID**

**News**

**Media Inquiries**

**Contact**

**Programs**

Support True the Vote          Join the Movement          Contact Us

© 2016 True the Vote • contact: info@truethevote.org

# True the Vote, Inc. v. IRS, et al

### Original Case: 1:13-cv-00734

**D.C. Circuit U.S. Court of Appeals**

| | |
|---|---|
| **Case #:** | 0:14-cvus-05316 |
| **Type** | civil us / united states |
| **Nature of Suit** | 440 Civil Rights - Other Civil Rights |
| **Case Filed:** | Dec 19, 2014 |
| **Terminated:** | Aug 05, 2016 |

Docket   Parties (18)   News (1)

Last checked: **Monday Aug 08, 2016 7:11 AM EDT**

**Defendant - Appellee**
Internal Revenue Service

**Represented By**

Gilbert Steven
Rothenberg
*U.S. Department of
Justice*
contact info

DOJ Appellate
Counsel
*U.S. Department of
Justice*
contact info

Judith A. Hagley
*U.S. Department of
Justice*
contact info

Teresa E.
McLaughlin
*U.S. Department of
Justice*
contact info

**Defendant - Appellee**
United States of America

**Represented By**
Gilbert Steven
Rothenberg
*U.S. Department of
Justice*
contact info

Judith A. Hagley
*U.S. Department of
Justice*
contact info

Teresa E.
McLaughlin
*U.S. Department of
Justice*
contact info

**Defendant - Appellee**
Steven L. Miller, In his official and Individual capacity as former Deputy
Commissioner, Services & Enforcement, and Acting Commissioner,
Internal Revenue Service

**Represented By**
Catherine Danielle
Cockerham
*Steptoe & Johnson
LLP*
contact info

Brigida Benitez
*Steptoe & Johnson
LLP*
contact info

**Defendant - Appellee**
Douglas H. Shulman, In his individual capacity

**Represented By**
Catherine Danielle
Cockerham
*Steptoe & Johnson
LLP*
contact info

Brigida Benitez
*Steptoe & Johnson
LLP*
contact info

**Defendant - Appellee**
Lois Lerner, In her official and individual capacity as Director, Exempt
Organizations Division, IRS

**Represented By**
  Catherine Danielle
  Cockerham
  *Steptoe & Johnson*
  *LLP*
  contact info

  Brigida Benitez
  *Steptoe & Johnson*
  *LLP*
  contact info

**Defendant - Appellee**
Susan Maloney, In her official and individual capacity as an Exempt
Organizations Specialist, IRS

**Represented By**
  Eric Richard Nitz
  *Molo Lamken LLP*
  contact info

  Jeffrey Alan Lamken
  *Molo Lamken LLP*
  contact info

**Defendant - Appellee**
Ronald Bell, In his official and individual capacity as an Exempt
Organizations Specialist, IRS

**Represented By**
  Eric Richard Nitz
  *Molo Lamken LLP*
  contact info

  Jeffrey Alan Lamken
  *Molo Lamken LLP*
  contact info

**Defendant - Appellee**
Janine L. Estes, In her official and individual capacity as an Exempt
Organizations Specialist, IRS

**Represented By**
  Eric Richard Nitz
  *Molo Lamken LLP*
  contact info

  Jeffrey Alan Lamken
  *Molo Lamken LLP*
  contact info

**Defendant - Appellee**
Faye Ng, In her official and individual capacity as an Exempt
Organizations Sepcialist, IRS

**Represented By**
Eric Richard Nitz
*Molo Lamken LLP*
contact info

Jeffrey Alan Lamken
*Molo Lamken LLP*
contact info

**Defendant - Appellee**
Unknown Named Emlployees Of Internal Revenue Service, In their official
and individual capacities

**Defendant - Appellee**
John A. Koskinen, In his official capacity as Commissioner of the Internal
Revenue Service

**Represented By**
R. Craig Lawrence
*U.S. Attorney's Office*
contact info

**Defendant - Appellee**
William W. Wilkins, Jr., In his official and indivdual capacity as Chief
Counsel, Internal Revenue Service

**Represented By**
Catherine Danielle
Cockerham
*Steptoe & Johnson
LLP*
contact info

Brigida Benitez
*Steptoe & Johnson
LLP*
contact info

**Defendant - Appellee**
Holly Paz, In her official and individual capacity as Acting Manager,
Exempt Organizations Technical Unit, Acting Director, Office of Rulings &
Agreements, And Director, Office of Rulings & Agreements, IRS

**Represented By**
Catherine Danielle
Cockerham
*Steptoe & Johnson
LLP*
contact info

Brigida Benitez
*Steptoe & Johnson
LLP*
contact info

**Defendant - Appellee**
Cindy M. Thomas, In her official and individual capacity as Program
Manager, Exempt Organizations Determinations Unit of the IRS

**Represented By**
Catherine Danielle
Cockerham
*Steptoe & Johnson
LLP*
contact info

Brigida Benitez
*Steptoe & Johnson
LLP*
contact info

**Defendant - Appellee**
Steven Grodnitzky, In his official and individual capacity as Manager,
Exempt Organizations Technical Unit, IRS

**Represented By**
Catherine Danielle
Cockerham
*Steptoe & Johnson
LLP*
contact info

Brigida Benitez
*Steptoe & Johnson
LLP*
contact info

**Defendant - Appellee**
David Fish, In his official and individual capacity as Acting Director, Office
of Rulings & Agreements, IRS

**Represented By**
Catherine Danielle
Cockerham
*Steptoe & Johnson
LLP*
contact info

Brigida Benitez
*Steptoe & Johnson
LLP*
contact info

**Defendant - Appellee**
Michael Seto, In his official and individual capacity as Acting Manager, Technical Unit, IRS

**Represented By**

Catherine Danielle Cockerham
*Steptoe & Johnson LLP*
contact info

Brigida Benitez
*Steptoe & Johnson LLP*
contact info

**Plaintiff - Appellant**
True the Vote, Inc.

**Represented By**

Michael J. Lockerby
*Foley & Lardner LLP*
contact info

William Earl Davis
*Foley & Lardner LLP*
contact info

John C. Eastman
*Center for Constitutional Jurisprudence*
contact info

Cleta Deatherage Mitchell
*Foley & Lardner LLP*
contact info

Kaylan Lytle Phillips
*Public Interest Legal Foundation*
contact info

Mathew D. Gutierrez
*Foley & Lardner LLP*
contact info

Noel Henry Johnson
*Public Interest Legal Foundation*
contact info

 1. Federal Court rules that IRS discriminated against tea party groups (washingtontimes.com)
Submitted Tue 08/09/2016

**Docket last updated: 08/08/2016 7:11 AM EDT**

## Friday, December 19, 2014

US CIVIL CASE docketed. 14-5316

NOTICE OF APPEAL filed [1528283] by True the Vote, Inc. seeking review of a decision by the U.S. District Court in 1:13-cv-00734-RBW. Assigned USCA Case Number 14-5316

CLERK'S ORDER filed [1528285] directing party to file initial submissions: APPELLANT docketing statement due 01/20/2015. APPELLANT certificate as to parties, etc. due 01/20/2015. APPELLANT statement of issues due 01/20/2015. APPELLANT underlying decision due 01/20/2015. APPELLANT deferred appendix statement due 01/20/2015. APPELLANT notice of appearance due 01/20/2015. APPELLANT transcript status report due 01/20/2015. APPELLANT procedural motions due 01/20/2015. APPELLANT dispositive motions due 02/02/2015; directing party to file initial submissions: APPELLEE certificate as to parties, etc. due 01/20/2015. APPELLEE entry of appearance due 01/20/2015. APPELLEE procedural motions due 01/20/2015. APPELLEE dispositive motions due 02/02/2015 14-5316

**Continue to Create Account**

Privacy • Terms • About
PacerMonitor, LLC © 2016. Made in NYC